**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **26-03266-jd**

# Order Granting In Rem Relief from the Automatic Stay

The relief set forth on the following pages, for a total of 17 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**09/23/2026**

UNITED STATES BANKRUPTCY COURT DISTRICT OF SOUTH CAROLINA SEAL

Entered: 09/23/2026

J. Jefferson Davis IV
US Bankruptcy Judge
District of South Carolina

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Lakeshia Nicole Jenkins,<br><br>Debtor(s). | C/A No. 26-03266-JD<br><br>Chapter 13<br><br>**Order Granting *In Rem* Relief from Stay** |

**THIS MATTER** is before the Court on the Motion for Relief from Stay ("Motion") pursuant to 11 U.S.C. §§ 362(d)(1), (4)[1] filed by Creditor Walterboro Development Corporation ("Creditor"). Lakeshia Jenkins ("Debtor"), appearing pro se, filed an Objection to the Motion.[2] The Court held a hearing on the Motion on September 2, 2026. Debtor and Creditor attended.

The Court granted the Motion on the record and memorializes that decision in this Order.

**BACKGROUND**

This is Debtor's second bankruptcy case. Debtor's prior chapter 13 case, C/A No. 26-02000-JD ("First Case"), was filed on May 4, 2026, and was automatically dismissed on June 19, 2026, pursuant to § 521(i), due to Debtor's failure to file documents. Creditor moved for relief from the automatic stay in the First Case. Although Debtor opposed the motion, she failed to attend the hearing. Debtor also failed to attend a hearing on an Order to Appear and Show Cause.[3] The chapter 13

---

[1] Unless otherwise specified, all statutory cites in this order are to Title 11 of the United States Code.
[2] ECF No. 38.
[3] ECF No. 17, C/A 26-02000-JD.

trustee's final report reflects that Debtor failed to make plan payments as required by § 1326.[4]

Debtor commenced this case by filing a chapter 13 petition on July 20, 2026 ("Petition Date").[5] Because this is Debtor's second case pending within a one-year period, the duration of the automatic stay is limited by § 362(c)(3). Debtor failed to move within the first thirty days of the case to extend the automatic stay.[6]

While Debtor filed schedules with the petition, they were and remain deficient.[7] On Schedule A/B, Debtor did not disclose ownership of any real property, but the record reflects her ownership interest in 903 North Lemacks Street, Walterboro, SC 29488 (the "Property").[8] On Schedule D, Debtor listed one secured creditor, Jefferson Capital LLC, as having a secured claim in the amount of $68,000.00 secured by a single-family residence.[9] Debtor's schedules disclosed no other creditors although several creditors have now filed claims. Debtor's list of creditors only included Jefferson Capital, LLC, so no other creditor received formal notice of this case.

---

[4] ECF No. 47, C/A 26-02000-JD.

[5] ECF No. 1.

[6] Debtor testified that she filed a motion to extend the automatic stay. The Court's records reflect that no such motion was filed.

[7] On August 4, 2026, the Chapter 13 Trustee requested, and the Court entered a Rule to Show Cause for Failure to File Documents, which included amended schedules. ECF Nos. 18 and 19. A hearing on the Rule to Show Cause was held September 23, 2026, and the Court will enter a separate Order on that matter.

[8] *See* ECF No. 20.

[9] On August 21, 2026, Jefferson Capital Systems LLC filed two Proofs of Claim in this case. The first claim is for an outstanding credit card balance. Proof of Claim 8-1. The second claim is for a default civil judgment entered against Debtor and Debtor's son related to an auto loan. Proof of Claim No. 9-1. *See* ECF No. 1.

Debtor filed a proposed chapter 13 plan that addresses a debt secured by the Property; however, the plan fails to specifically name the affected creditor.[10] The proposed plan also fails to account for claims filed in this case that, although undisclosed in the schedules, are nevertheless allowed under the applicable rules. The Chapter 13 Trustee objected to the plan on these and other grounds, but Debtor has not yet filed a plan curing these facial defects.[11]

On August 4, 2026, Creditor filed the Motion seeking stay relief and *in rem* stay relief as to the Property.[12] A hearing was held September 2, 2026, and each party provided evidence in support of their respective positions. Debtor testified. Creditor provided the testimony of Chief Wade Marvin ("Chief Marvin") of the Walterboro Police Department ("WPD") and Assistant City Manager Ryan McCleod ("McCleod") of the City of Walterboro. Creditor introduced into evidence the mortgage, various assignments, a judgment of foreclosure, notices of sale, and numerous police reports.

At the September 2, 2026 hearing, Creditor sought relief from the automatic stay under § 362(d)(1) on five grounds: (1) Debtor's bad faith in filing successive bankruptcy cases on the eve of foreclosure sales; (2) failure to maintain insurance on the Property; (3) waste arising from the Property's extensive history of criminal activity; (4) the risk of federal civil forfeiture; and (5) the risk of forfeiture under South Carolina's drug nuisance abatement statute.

[10] ECF No. 26.
[11] ECF No. 36.
[12] ECF No. 20.

The record establishes Creditor's security interest in the Property and that Debtor filed both bankruptcy cases shortly before scheduled foreclosure sales of it.[13] A foreclosure sale was scheduled for May 4, 2026, and Debtor filed her first chapter 13 case that same day. After that case was unsuccessful, a second foreclosure sale was scheduled for August 1, 2026, and Debtor filed the present case on July 20, 2026. Creditor presented evidence of this timeline and of Debtor's lack of progress in both cases, asserting that the circumstances demonstrated that the filings served primarily to delay foreclosure.

The remaining grounds arise from the extensive history of criminal activity at the Property and the resulting damage. Chief Marvin testified that the Property is among Walterboro's highest-volume locations for calls for service involving violent crime. From February 1, 2021, through December 31, 2024, WPD documented twenty-five investigations or incidents involving the Property, including six drive-by shootings, a homicide, illicit gambling, the recovery of firearms and ammunition pursuant to a search warrant, and an investigation identifying the Property as the originating location of a residential burglary. Chief Marvin further testified that criminal activity at the Property had not abated during the pendency of Debtor's two bankruptcy cases.

Chief Marvin also testified that he observed approximately forty to fifty bullet holes on the front of the Property and that criminal activity had escalated since he compiled the calls-for-service information. The Court admitted Movant's

[13] Movant Exhibits 1, 2, 3, 4, 5, and 6.

Exhibit 8, which consists of police reports associated with the Property during Debtor's ownership. Chief Marvin testified that WPD maintained those reports in the ordinary course of its business and that he excluded incidents not identifying the Property. The reports document criminal activity at the Property and include photographs showing significant damage to its interior and exterior. The Court therefore found the reports relevant, over Debtor's objection, to Creditor's request for relief from the automatic stay, including prospective *in rem* relief.

The evidence reflects that the Property has been neglected and has suffered unrepaired exterior damage. The Colleton County tax assessment lists the Property's value at approximately $70,000. Debtor testified that the exterior damage remains unrepaired and that, because of the Property's condition, its value has likely declined by approximately $20,000 from the assessed value. The photographs included in Exhibit 8 corroborate the unrepaired damage and reflect conditions that impair the Property's value and marketability.

Finally, Creditor raised the risk of forfeiture as an additional basis for relief under § 362(d)(1). *See* 21 U.S.C. § 881(a)(7); S.C. Code Ann. § 44-53-520(a). Creditor contends that federal or state forfeiture proceedings could materially impair the value and marketability of its collateral and could jeopardize its ability to enforce its lien.

Debtor testified that she filed the present case to prevent foreclosure on her home. She did not, however, identify a plan to cure the deficiencies identified in the Chapter 13 Trustee's objection to confirmation or in the Order to Appear and Show

Cause. On cross-examination by Creditor, Debtor testified that she has not maintained an active homeowner's insurance policy covering the Property since 2025. When asked whether she could afford to pay off the mortgage in the event of a total loss of the Property, Debtor testified that she could not. While testifying, Debtor requested a continuance. The Court denied the request because the § 521(i) issue identified in the Order to Appear and Show Cause could have rendered Creditor's requested relief moot before the Motion could be heard at a later date.

## DISCUSSION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G), and the Court may enter a final order.

### I. The automatic stay does not apply in this case.

Creditor seeks relief from the automatic stay under § 362(d)(1). The record establishes ample cause for relief under § 362(d)(1), including continuing waste and deterioration of the Property, the resulting impairment of Creditor's collateral, the extended payment default, and the lack of demonstrated prejudice to the estate from foreclosure. However, the Court need not make further findings regarding cause because the automatic stay terminated on August 19, 2026, pursuant to § 362(c)(3). This is Debtor's second bankruptcy case in the last year, and Debtor did not move to extend the automatic stay within the first thirty days after the Petition Date. 11 U.S.C. § 362(c)(3)(A). Section 362(c)(3)(A)-(B) provides:

> (A) The stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any

> lease shall terminate with respect to the debtor on the 30th day after filing the later case;
> (B) On motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors [. . .] after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed. . .

Because Debtor did not file a motion seeking to extend the automatic stay within thirty days of filing the petition, the Creditor's request for relief for cause is unnecessary. The protections of § 362(a) ceased to apply to this case as of August 19, 2026, and Creditor is permitted to exercise its state-law remedies without a further order from this Court. *In re Jupiter*, 344 B.R. 754, 759-60 (Bankr. D.S.C. 2006).

## II. The Court grants Creditor's motion for *in rem* relief.

Creditor also moved for *in rem* relief under § 362(d)(4) of the Bankruptcy Code. The request under § 362(d)(4) presents a separate question from whether cause exists under § 362(d)(1). *In rem* relief is extraordinary because it not only binds the debtor presently before the Court, but also binds the real property itself, prospectively precluding such property from receiving the protection of § 362(a) in a subsequent bankruptcy case filed by another party. The Court therefore must find more than merely cause for relief from the stay in the present case; it must find the circumstances specified in § 362(d)(4).

Section 362(d) provides,

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>
> > (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> >
> > (B) multiple bankruptcy filings affecting such real property.
>
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d)(4).

As a threshold matter, the existence of an automatic stay is not a prerequisite to relief under § 362(d)(4). *See In re Cleckley*, 677 B.R. 686, 691 (Bankr. D.S.C. 2026) (considering whether *in rem* relief can be granted when there was no automatic stay in place pursuant to § 362(c)(4)); *In re Wallace*, 676 B.R. 298, 309 (Bankr. S.D.N.Y. 2026). Section 362(d)(4) is specifically designed to break the cycle of harm caused by multiple bankruptcy filings where a bankruptcy case is part of a broader scheme to either delay, hinder, or defraud a creditor with a lien on real property. *See* H.R. Rep. No. 109-31, pt. 1, at 70 (2005) (discussing the addition of § 362(d)(4) and Congressional intent to reduce abusive filings).

The creditor bears the initial burden of establishing entitlement to relief under § 362(d)(4). To obtain such relief, the creditor must demonstrate that: (1) it holds a security interest in real property; (2) the filing of the petition was part of a scheme; (3) the object of the scheme was to delay, hinder, or defraud the creditor; and (4) the scheme involved either (a) a transfer of all or part ownership of, or another interest in, the real property without the creditor's consent or court approval, or (b) multiple bankruptcy filings affecting the property. *See Cleckley*, 677 B.R. at 690.

The creditor's showing as to the existence and purpose of a scheme is subject to burden shifting. Once the creditor establishes a prima facie case that the petition was part of a scheme to delay, hinder, or defraud the creditor, the burden shifts to the debtor to rebut that showing. *In re Hudgens*, 662 B.R. 250, 255 (Bankr. D.S.C. 2024) (citing *In re Moss*, 625 B.R. 305, 307 (Bankr. D.S.C. 2021)).

The first element is met. Creditor established the chain of title and holds a security interest in the Property.

Regarding the second and third elements, "[a] scheme for purposes of § 362(d)(4) is an intentional artful plot or plan to delay, hinder [or] defraud creditors." *Id.* at 255 (quoting *Moss*, 625 B.R. at 307). Put simply, a scheme is an "intentional plan to accomplish a particular result." *In re Anderson*, 594 B.R. 509, 515 (Bankr. D. Me. 2018). Direct proof of such intent is uncommon. As courts have recognized, a debtor is not expected to admit that a filing was part of a scheme; the determination therefore ordinarily requires the Court to draw reasonable inferences from the

timing, sequence, and substance of the relevant filings and the debtor's conduct in those cases. *See In re Briggs*, No. 12-BK-14853, 2012 WL 3780542, at *5 (Bankr. N.D. Ill. Aug. 31, 2012). The movant also need not establish fraud. Congress amended § 362(d)(4) in 2010 to make clear that relief is available upon a showing of a scheme to delay, hinder, **or** defraud creditors; thus, proof that the scheme was intended to delay or hinder is sufficient. *See* Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327, § 2(a)(1), 124 Stat. 3557, 3559 (2010).

This Court identified nonexclusive considerations relevant to determining whether prospective *in rem* stay relief was warranted in the context of serial bankruptcy filings. *In re Henderson*, 395 B.R. 893, 901 (Bankr. D.S.C. 2008). The request before the court in *Henderson* was under §§ 105(a) and 362(d)(1) and (2), and the Court invoked its authority to prevent abuse of the bankruptcy process by granting prospective *in rem* relief. *Id.* at 898–902. In doing so, the Court relied, in part, on authority decided before the 2005 enactment of § 362(d)(4) because that provision did not apply to the facts before it. Although *Henderson* did not decide a request for relief under § 362(d)(4), *Henderson*'s considerations are instructive in evaluating whether *in rem* relief is appropriate under § 362(d)(4). Indeed, subsequent decisions in this District have cited *Henderson* for that purpose. *See Hudgens*, 662 B.R. at 255; *Moss*, 625 B.R. at 307.

The pertinent, nonexclusive considerations include: "(1) strategic filing of bankruptcy petitions to prevent collection; (2) multiple petitions by multiple parties to protect common property; (3) lack of evidence of changed circumstances between

filings; and (4) inability to fund a plan." *Henderson*, 395 B.R. at 901. Applied in the § 362(d)(4) setting, these considerations direct the Court to examine, among other things, whether the petition was filed on the eve of a scheduled foreclosure sale or other collection event; whether successive filings by the debtor, co-debtors, co-owners, family members, transferees, or affiliated entities have repeatedly invoked the stay as to the same property; whether circumstances materially changed between cases so that the later filing presents a legitimate prospect of reorganization or repayment; and whether the debtor has the income, financing, equity, or other means to fund a feasible plan or otherwise address the secured debt.

*Henderson*'s considerations do not constitute an exhaustive or rigid checklist. The Court may also consider the disposition and prosecution of the prior cases. For example, the Court may consider whether the debtor's prior case was dismissed for failure to make plan payments, file required documents, comply with court orders, or confirm a feasible plan, as well as whether the debtor meaningfully pursued bankruptcy relief in good faith. *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009). The Court may also consider the debtor's history of mortgage delinquency. *Grier v. U.S. Bank Tr. N.A.*, No. 1:22-cv-1234-MLB, 2023 U.S. Dist. LEXIS 120247, at *8, 2023 WL 4359476, at *3 (N.D. Ga. May 24, 2023). In addition, the Court may weigh equitable considerations, including the relative harm to the movant compared to other persons holding an interest in the real property. *Hernandez v.*

*U.S. Bank N.A.*, No. 6:25-cv-2050-JSS, 2026 U.S. Dist. LEXIS 171523, at *21, 2026 WL 2219215 (M.D. Fla. Aug. 6, 2026).

Ultimately, whether a scheme exists turns on whether the evidence, viewed as a whole, demonstrates an abuse of the bankruptcy process through multiple filings designed to frustrate a secured creditor's legitimate efforts to enforce its interest in the property without a corresponding bona fide effort to comply with the Bankruptcy Code or to reorganize the debtor's financial affairs. *See Henderson*, 395 B.R. at 901.

Courts commonly recognize that repeated bankruptcy petitions filed on the eve of successive foreclosure efforts may provide strong circumstantial evidence that a debtor intended to delay or hinder a secured creditor. *Wallace*, 676 B.R. at 308 (quoting *In re Hymes*, No. A12-00599-GS, 2013 WL 653060, at *4 (Bankr. D. Alaska Feb. 20, 2013)). This inference, however, is not automatic. Successive filings alone do not establish a scheme as a matter of law; the movant must establish an intentional "artful plot or plan," rather than mere "misadventure or negligence," and must support that conclusion with evidence connecting the filings to an effort to delay, hinder, or defraud the creditor. *Cleckley*, 677 B.R. at 691. The determination is fact-sensitive and requires the Court to weigh all evidence presented. *See In re Skubinski*, 677 B.R. 387, 394–95 (Bankr. M.D. Fla. 2026).

Having weighed the evidence and the totality of the circumstances, the Court finds that Creditor has established, by circumstantial evidence, an intentional scheme and that its object was to delay or hinder Creditor's enforcement of its

interest in the Property. This finding rests on more than the existence of two petitions or their proximity to foreclosure dates. Debtor filed the First Case on the very date of Creditor's scheduled foreclosure sale, failed to prosecute that case and to file required documents, and then filed this case less than three weeks after dismissal and shortly before a second scheduled foreclosure sale. These strategic filings cancelled scheduled foreclosure sales and thereby delayed and hindered Creditor's enforcement efforts. While a bankruptcy filing timed to save property is a common, appropriate, and lawful reason to seek bankruptcy protection, neither this case nor the prior case has accomplished any other discernible bankruptcy purpose beyond forestalling Creditor's efforts to enforce its rights to reclaim an asset in immediate jeopardy of loss.

In the prior case, Debtor failed to file required documents and failed to obtain confirmation. She has made no meaningful progress toward confirmation in this case. Indeed, the proposed plan contains facial deficiencies identified by the Chapter 13 Trustee, and Debtor had not filed an amended plan addressing those deficiencies. The record also demonstrates no material change in Debtor's circumstances between the two filings. This case was filed less than three weeks after the dismissal of the First Case, and Debtor remains employed by the same employer. Debtor has again failed to file the full and complete disclosures required by § 521(a), as well as other necessary documents, and further failed to appear and prosecute her case at a hearing on an Order to Appear and Show Cause. Debtor did not make plan payments in the prior case and has not made payments in this

case,[14] supporting a finding that the successive filings were not accompanied by an earnest effort to reorganize her financial affairs and repay creditors.[15]

Considered together, these facts are not fairly characterized as an isolated filing defect, an unsuccessful but good-faith attempt at reorganization, or mere negligence or misadventure. The same foreclosure-driven sequence recurred after the First Case was dismissed; Debtor again failed to provide complete and accurate disclosures, filed a facially deficient plan, demonstrated no materially changed financial circumstances or feasible path to address Creditor's debt, failed to prosecute successive bankruptcy cases, and remained in possession of uninsured collateral that continued to deteriorate. The Court therefore infers an intentional scheme to obtain the delay produced by the bankruptcy process without a corresponding bona fide effort to comply with the Bankruptcy Code or reorganize.

Having established a prima facie case that this filing was part of a scheme to delay or hinder Creditor, the burden shifted to Debtor to rebut that showing. Debtor's testimony did not do so. Instead, the evidence establishes that Debtor remains in possession of the Property, without maintaining insurance or making payments to Creditor, while the Property continues to face deterioration and other risks. Debtor offered no evidence of a material change in circumstances, a feasible means to cure the default, or a genuine prospect for reorganization. On this record,

[14] ECF No. 36.

[15] Debtor may be ineligible to proceed with this case. This case was filed fewer than 180 days after dismissal of Debtor's prior case, in which Debtor failed to file required documents, appear, and prosecute the case. If those failures were willful, § 109(g) would bar Debtor from being a debtor in a case filed during that 180-day period. As no party has raised the issue of eligibility, the Court expresses no determination regarding Debtor's eligibility under § 109(g).

the Court finds that the filings served no demonstrated bankruptcy purpose but constituted a scheme to delay and hinder Creditor's foreclosure efforts.

Finally, the fourth element is met because the scheme involved multiple bankruptcy filings affecting the real property. The Court recognizes that *in rem* relief is more commonly granted in cases involving an extensive history of bankruptcy filings. In this case, there is only one prior filing. Nothing in § 362(d)(4)(B) requires a minimum number of filings beyond the multiple filings implicated by the statute. The statute requires only that the scheme involve "multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4)(B). That requirement is met here through the one prior filing and the current filing.

Although the filing history is limited, the unusual circumstances warrant *in rem* relief under § 362(d)(4).[16] The evidence establishes that the Property has sustained ongoing damage from pervasive, unabated criminal activity that has materially diminished, and continues to diminish, its value; that Debtor has not made a mortgage payment in more than a year; that Debtor has failed to insure the Property against loss; and that Creditor's collateral faces ongoing risks of further deterioration.

These facts provide substantial cause for relief under § 362(d)(1) and, more importantly, demonstrate the significant prejudice Creditor would suffer if

---

[16] The facts may also warrant relief under § 105(a). *Henderson*, 395 B.R. at 901 & n.15 (granting *in rem* relief under § 105(a) and noting "Congress gave no indication in enacting § 362(d)(4) that it intended to prevent bankruptcy courts from employing 11 U.S.C. § 105(a) . . . to enter orders, when necessary or appropriate, to prevent the harm arising from abusive filings. If anything, the 2005 amendments evidence a congressional intent that the courts crack down on abusive filings by debtors" (alteration in original) (quoting *In re McCray*, 342 B.R. 668, 670 (Bankr. D.D.C. 2006)); *Kelly v. Naples Prop. Holding Co., LLC*, 671 B.R. 432, 456 (D. Md. 2025).

foreclosure were delayed again. Section 362(d)(4) is designed to prevent this type of abuse by affording prospective protection against future bankruptcy filings affecting the Property.

**IT IS THEREFORE ORDERED:**

1. The automatic stay is no longer applicable in this case, and Creditor Walterboro Development Corporation, any successors and/or assigns, may pursue any remedies available under state law with respect to the Property located at 903 North Lemacks Street, Walterboro, SC 29488;
2. *In rem* relief is granted to Creditor Walterboro Development Corporation, any successors and/or assigns, pursuant to 11 U.S.C. § 362(d)(4) with respect to 903 North Lemacks Street, Walterboro, SC 29488; and
3. If recorded in compliance with applicable laws governing notices of interests or liens in real property, this Order shall be binding in any other case under this title purporting to affect 903 North Lemacks Street, Walterboro, SC 29488, filed not later than two (2) years after the date of the entry of this Order by the Court.

**AND IT IS SO ORDERED.**